**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DENNIS C. C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21-CV-123-CDL** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>OPINION AND ORDER</u>**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons, set forth below, the Court **affirms** the Commissioner's decision.

## I.    Standard of Review

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423.  The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)).  Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.     Background and Procedural History

Plaintiff filed an application for disability insurance benefits on March 22, 2019, and for supplemental security income on March 25, 2019. (R. 15). He alleges that he became disabled due to high blood pressure, diabetes, neuropathy, arthritis, joint pain, and vision problems. (R. 66). He was 50 years old on the amended alleged onset date of April

13, 2019. (R. 15, 65). Prior to the onset date, plaintiff was an assembler in an oilfield and a plumber's helper.

The Commissioner denied plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (R. 140-141). The ALJ held a telephone hearing on July 20, 2020. (R. 34-60). Testimony was given by plaintiff and a Vocational Expert (VE). On September 25, 2020, the ALJ issued a decision denying benefits. (R. 17-32). On January 14, 2021, the Appeals Council denied a request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-4). Plaintiff filed a timely appeal in this Court, which has jurisdiction to review the ALJ's September 25, 2020 decision under 42 U.S.C. § 405(g).

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

3

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id*.

Here, at step one the ALJ noted that Plaintiff drove his brother-in-law to and from a plumbing job during the alleged period of disability, but the ALJ found that this work did not meet the threshold for substantial gainful activity. (R. 17). At step two, the ALJ determined that Plaintiff's type 2 diabetes mellitus with neuropathy; osteoarthritis of the right knee, status post-total knee arthroplasty; bilateral cubital tunnel syndrome, status post left-sided surgical release; and bilateral carpal tunnel release, status post-bilateral surgical release, are severe impairments. (R. 18). The ALJ also found that Plaintiff's hyperlipidemia, hypertension, and non-alcoholic steatohepatitis are non-severe. *Id.*

At step three, the ALJ found that plaintiff's impairments do not meet or equal the severity criteria for Listing 1.02 (major dysfunction of a joint) or 11.14 (diabetic and entrapment neuropathy). (R. 19). Although evidence showed the disorganization of motion function, the ALJ found that the record did not establish the severity required to meet or equal the Listing. *Id.* The ALJ considered plaintiff's Diabetes Mellitus in addressing various Listing categories, including 1.00 (musculoskeletal system); 2.00 (diabetic retinopathy); 4.00 (coronary and peripheral vascular disease); 5.00 (abnormal gastrointestinal motility); 6.00 (diabetic neuropathy); 8.00 (poor healing from bacterial or fungal skin infection); 11.00 (diabetic peripheral and sensory neuropathies); 12.00

(cognitive impairment, depression, and anxiety). (R. 19; *see also* Social Security Ruling (SSR) 14-2p).

At step four, after considering the entire record, the ALJ determined that plaintiff has the RFC:

> to perform light work, except that [plaintiff] can only stand and walk 4 hours in and 8-hour workday; occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffold; can vocationally push, pull and operate foot controls with the bilateral lower extremities; can occasionally stoop, balance, kneel and crouch; can frequently handle and finger with the bilateral upper extremities; and can never work at unprotected heights.

(R. 20). The ALJ indicated that in making this finding, he considered all of plaintiff's symptoms in connection with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p, as well as medical opinions and prior administrative findings, in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. *Id.*

Citing testimony by the VE as to a hypothetical person with plaintiff's RFC, the ALJ found at step four that plaintiff is unable to perform his past relevant work. (R. 24-25). At step five, based on the VE's testimony as to a hypothetical person with plaintiff's age, education, and RFC, the ALJ found that Plaintiff can perform the requirements of occupations including:

> ***Order Caller***, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 209.667-014, with 13,000 jobs existing in the national economy;
>
> ***Fastener***, light exertion, unskilled, SVP level 2, DOT # 699.685-026, with 12,000 jobs existing in the national economy; and

>    ***Bander***, light exertion, unskilled, SVP level 2, DOT # 920.687-026, with 4,000 jobs existing in the national economy.

(R. 25-26). Accordingly, the ALJ found plaintiff not disabled at step five. (R. 26).

## IV.   Discussion

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. He contends that, due to pain and other symptoms relating to his neuropathy and total knee arthroplasty, he can only walk and stand for a total of two hours in a workday. The Commissioner argues that the ALJ 's physical RFC determination is supported by substantial evidence and that the ALJ properly considered plaintiff's subjective statements about his pain and other symptoms.

A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." 20 C.F.R. §§ 404.1529(c), 416.929(c). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*

*v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[2]   Consistency determinations "are

peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.

1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation

of symptom allegations "warrant particular deference").[3] However, the ALJ must explain

---

[2]      While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and *Keyes-Zachary v. Astrue*, 695 F.3d 1156 (10th Cir. 2012). *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

       The applicable regulations further explain that in evaluating pain, the Commissioner considers factors including

> (i) [the claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum*, 385 F.3d at 1273-74 (quoting *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

[3]      The Commissioner no longer uses the term "credibility." *See* SSR 16-3p, 2017 WL 5180304 (explaining purpose to "eliminat[e] the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character"). However, the agency continues to follow the same "fundamental rule . . . that 'if an individual's statements about the intensity, persistence, and limiting effects of

"the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

> At the hearing, plaintiff testified that, even after his knee surgery,
>
>> if I'm on [my] feet 30 minutes that knee starts to swell. And I can't bend over, I can't squat. And even with this neuropathy I lose my balance, my feet burn. I mean, it's like I said if I bend over just a little bit, somebody's going to have to help me up. Because I lose my feeling in my toes with that neuropathy.

(R. 46). Plaintiff also stated that he has trouble keeping his balance due to neuropathy. *Id*. Plaintiff and his wife live on a ranch with "chickens and a few cows and dogs," but plaintiff testified that, because of his limitations, he can perform chores such as caring for the animals only for 20 to 25 minutes at a time. (R. 42, 46-47).

The ALJ found that the degree of pain, persistence, lack of motion, etc. described by plaintiff was not entirely supported by the medical evidence in the record. (R. 21). The ALJ noted that plaintiff reported right knee pain in May 2018, after he was kicked by a cow, but that x-rays showed only nominal degenerative change, and his reflexes and muscle tone were normal. Furthermore, in July 2018, he had a normal range of motion and no swelling, and he did not have any treatment for knee pain again until September 2019. (R.

---

symptoms are inconsistent with the objective medical evidence and the other evidence, [an ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 n.7 (10th Cir. July 6, 2021) (unpublished) (quoting SSR 16-3p).

23; *see* R. 355-359). A few months later, in February 2020, plaintiff underwent surgery for a total knee replacement. (R. 23).

Subsequent examination showed a reduced range of motion but only mild tenderness and swelling, full motor strength, no instability, normal gait, and decreasing pain. *Id*. The ALJ noted that,

> [a]lthough [plaintiff] was walking with a walker . . . less than three weeks after surgery, there is no indication that [plaintiff's] surgeon expected less than a full recovery from the surgery or a lack of improvement in symptoms from his pre-operative state. Further, there is no indication [plaintiff] reported to his surgeon, physical therapist, or any other provider that he has had continued pain or a failure to respond to the surgery with improved symptoms. As such, the record does not establish significant symptoms affecting [plaintiff's] ambulation for more than a five-month period, with the expectation that [plaintiff] has continued, and will continue, to recover and regain use of his right knee with time for healing and physical therapy.

*Id*. (citing exhibits).

Although plaintiff argues that the ALJ failed to provide "specific reasons" for his assessment of plaintiff's subjective statements, as required by SSR 16-3p, as set forth above, the ALJ provided a detailed explanation, with references to relevant evidence in the record. (Doc. 17 at 11). As the ALJ's decision explained, plaintiff was expected to regain use of his right knee after healing and completing physical therapy. (R. 23). Plaintiff contends this was improper speculation by the ALJ. Plaintiff points to post-surgery records indicating that plaintiff at times still had decreased strength in his lower right extremity, daily swelling, and spasms.

However, the same treatment records also noted objective findings that support the RFC determination for a limited range of light work. (*See* R. 635 (noting a good active

range of motion in the lower right extremity and a normal gait with "[g]ood stride [and] ground floor clearance bilaterally"); R. 734-735 (noting mild tenderness, swelling and incision healing, but flexion and extension strength were 5/5 and "all tests for stability [were] normal"). Moreover, these treatment records reflected plaintiff's condition only weeks after his knee replacement surgery. (*See, e.g.*, R. 637 (referring plaintiff for physical therapy but noting prognosis was "[e]volving/changing")).

The ALJ's decision reflects that he appropriately considered this evidence in assessing plaintiff's RFC. (*See* R. 22-23). As the ALJ noted, there was no indication that plaintiff's surgeon "expected less than a full recovery from the surgery or a lack of improvement in symptoms from his pre-operative state." *Id*. As such, the ALJ's finding was consistent with the evidence of record. *See Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) ("The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.").

Plaintiff argues that the ALJ ignored certain objective medical evidence, such as the observations of Scott Dunitz, M.D. in October 2019, noting that plaintiff had a "minimal antalgic limp" and "small effusion with marked tenderness over the medial joint space" of the right knee. (R. 711). In fact, the ALJ's decision provided an extensive discussion of Dr. Dunitz's examination notes. (R. 22). In December 2019, Dr. Dunitz again examined plaintiff, who complained of worsening symptoms after an injection provided only brief relief. (R. 715). As the decision explained, these events led to plaintiff's knee replacement surgery a few months later. (R. 22).

Moreover, the record contains no opinion contrary to the ALJ's finding that plaintiff can stand or walk up to four hours in a workday. The prior administrative findings are dated prior to plaintiff's knee replacement surgery in February 2020. (*See* R. 61-116). Edna Daniel, M.D. and Matthew Khan, M.D. both opined that plaintiff retains an RFC for light exertional work, with no additional postural or manipulative limitations. (*See* R. 24 (citing exhibits)). After discussing these opinions in the context of more recent objective medical evidence, the ALJ found that additional exertional, postural, and manipulative limitations were appropriate. *Id*. As such, the medical opinions of Drs. Daniel and Khan do not support plaintiff's position that greater limitations are warranted.

Plaintiff objects to the ALJ's consideration of his self-reported activities. An ALJ is required to consider a claimant's reported activities of daily living. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Here, the ALJ found "persuasive" the fact that, despite his impairments, plaintiff "has continued to drive a vehicle, including in his job as a plumber helper, shop in stores for household items and plumbing supplies, and work on his ranch caring for livestock, with limitations on his ability to bend and squat." (R. 24). Plaintiff contends the activities he reported before the knee surgery are superseded by more recent medical evidence that showed he had to limit standing and walking to 30 minutes or his knee will swell. He asserts that the ALJ "downplayed" the limitations he faces when performing activities and chores on the ranch. (Doc. 17 at 10-11).

However, the ALJ considered and addressed plaintiff's hearing statements in his decision. (*See* R. 21). The ALJ's decision also discussed medical records both before and after plaintiff's knee surgery that addressed his complaints of swelling. (R. 21-23). While

plaintiff suggests that the record shows greater limitations by the time of the ALJ hearing in July 2020, as set forth above, substantial evidence supports the ALJ's conclusion that the medical evidence in the record did not support the degree of limitation alleged. The ALJ also adequately explained the link between the evidence and her assessment of Plaintiff's subjective statements. *See Kepler*, 68 F.3d at 391. Accordingly, Plaintiff has shown no reversible error. *See id.*; *see also Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

## IV.   Conclusion and Recommendation

As set forth above, the ALJ's decision is supported by substantial evidence and reflects the application of proper legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed.**

**SO ORDERED** this 29th day of September, 2022.


*Christine D. Little*

Christine D. Little
United States Magistrate Judge